**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SANDRA LEUNG and HSIAO CHUN WU,

<div style="float:right">

**FILED**
**CLERK**

3:17 pm, Oct 21, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

</div>

Plaintiffs,

-against-

THE TOWN OF OYSTER BAY, CHRISTINA
IPPOLITO and CHERYL CENDERELLI, as
Successors to FREDERICK. P. IPPOLITO,
Deceased, JOSEPH CIAMBRA, individually,
GARY BLANCHARD, individually, and
JOSEPH CANGRO, individually,

Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:16-cv-4356 (ADS) (AYS)

<u>**APPEARANCES:**</u>

**Campanelli & Associates, P.C.**
*Attorneys for the Plaintiffs*
1757 Merrick Avenue, Suite 204
Merrick, NY 11566
  By:  Andrew J. Campanelli, Esq., Of Counsel.

**Law Offices of David A. Antwork, P.C.**
*Attorneys for the Plaintiffs*
1757 Merrick Avenue, Suite 205
Merrick, NY 11566
  By:  David Antwork, Esq., Of Counsel.

**Christopher Kendric**
*Attorney for the Defendants*
1225 Franklin Avenue, Suite 450
Garden City, NY 11530
  By:  Christopher Kendric, Esq.

**Office of the Town Attorney**
*Attorneys for Defendant Town of Oyster Bay*
54 Audrey Avenue
Oyster Bay, NY 11771
  By:  Matthew M. Rozea, Esq., Town Attorney

1

**SPATT, District Judge**:

## I.    BACKGROUND

This case involves a long fact pattern arising from a dispute between property owners and a municipality and its employees. The background section of this opinion outlines that dispute in three parts. The first part recounts the facts as summarized in the complaint. The second part recapitulates a similar action filed against the same Defendants, arising from the same dispute as the present action. The third part lists the claims raised in the present action as well as a pending Federal Rule of Civil Procedure ("FED. R. CIV. P.") 56 motion for summary judgment raised by some of the defendants, and a request that two defendants receive qualified immunity. In the discussion section, this Court analyzes that motion and the request for qualified immunity. For the reasons set forth below, the Court grants the Defendants' motion in part, denies the motion in part, and denies the request for qualified immunity.

### A.  Factual History

In August 2016, Sandra Leung and Hsaio Chun Wu (the "Plaintiffs") brought this 42 U.S.C. § 1983 action against The Town of Oyster Bay (the "Town") and multiple town employees in their individual capacity, namely, Commissioner of the Department of Planning and Development Frederick P. Ippolito, and building inspectors Joseph Ciambra, Gary Blanchard, and Joseph Cangro (the "Defendants"). ECF 1. The Plaintiffs alleged the following. They were owners and landlords of a restaurant located at Two Spring Street, Oyster Bay, New York (the "Premises"), which was located across the street from Town Hall. *Id.* at 1, 8. Prior to their ownership of the Premises, the Town issued a Certificate of Occupancy for the Premises to operate as a restaurant. *Id.* at 6–7. At the time the Plaintiffs purchased the Premises in 2004 for $700,000, it was operating as a restaurant called Al Dente, and it also had an apartment above the

restaurant where one tenant resided. *Id.* at 8, 13. Given its proximity to Town Hall, Town employees made up approximately 75 percent of Al Dente's lunch crowd, and they also attended Al Dente for office parties and other group celebrations. *Id.* The individual Defendants were among those frequent patrons. *Id.*

The Plaintiffs further alleged that Commissioner Ippolito himself owned another Italian restaurant. *Id.* at 9. In May 2012, Ippolito met with Philip M. Morizio, the then owner of Al Dente, and told him that Al Dente was "finished doing business in Oyster Bay." *Id.* The Town then cited the Premises and the Plaintiffs with several violations of the Town Code (the "May 2012 Citations"), which were later dismissed. *Id.* at 10. Ippolito later barred Town employees from eating at Al Dente, and told Morizio that he would shut down the restaurant if he did not install a permanent enclosure in its courtyard. *Id.* at 10–11. Ippolito also failed to cooperate with Morizio to get the Town's approval for the Food Network to renovate the Premises as part of a television show, causing Morizio to contact the Town Supervisor's office. *Id.* at 11–12.

The Plaintiffs further alleged that on August 13, 2013, Ippolito sent the other individual Defendants to the Premises to again falsely cite the Premises for Town Code violations and issued an "Emergency Safeguard Notification" as a false pretext for shutting down Al Dente. *Id.* at 12. Building Inspector Defendant Blanchard told Morizio that Ippolito was angry about Ippolito contacting the supervisor's office, and said "[Ippolito] is the gun and I am the bullet." *Id.* at 13. Without a hearing, the Defendants padlocked the premises; shut off the gas and electricity to the restaurant and the basement; issued new citations (the "September 2013 Citations") that charged the Plaintiffs with violating Article 96 of the Town Code, titled "Dangerous Buildings"; filed two false Emergency Safeguard Notifications; and placed

"Dangerous Building" notices on Al Dente's windows, although they allowed the tenant in the upstairs apartment to remain. *Id.* at 12–14, 17.

The Plaintiffs contended that the Premises' numerous "permits, approvals, authorizations and certificates of occupancy" disproved the Defendants' numerous false accusations. *Id.* at 14–17. Al Dente remained padlocked, with the utilities turned off, from September 16, 2013 until January 2015, and the restaurant sustained approximately $40,000 in damages during this time because of burst pipes, flooding, and destroyed appliances. *Id.* at 17–18.

On an unspecified date in the winter of 2014, the Town allowed the Plaintiffs temporary access to the Premises to file an insurance claim, and then padlocked the Premises again. *Id.* at 18. The insurance company disclaimed coverage, reasoning that the damage resulted from an intentional act. *Id.* at 19. In January 2015, after Plaintiff Leung informed Ippolito that Al Dente had been forced out of business, Ippolito removed the padlocks from the Premises the same day. *Id.* at 19–20. Acting under the belief that the Defendants would impede any effort to operate a restaurant, the Plaintiffs sold the Premises in March 2015. *Id.* at 20. The Plaintiffs contend that while the Premises had a market value of $1.2 million, the Defendants' false designation of the Premises as a dangerous building and the refusal to allow a restaurant tenant caused the Premises to be sold for only $740,000. *Id.* However, the buyers of the Premises, who apparently are friendly with Ippolito, were able to operate a restaurant at that location. *Id.* The Plaintiffs also assert that the padlocking of Al Dente forced the restaurant out of business, which cost them $4,300 in monthly rent. *Id.*

In September 2017, the Court granted the Plaintiffs' FED. R. CIV. P. 25 motion to substitute Christina Ipppolito and Cheryl Cenderelli for Frederick Ippolito, because of Frederick Ippolito's death. ECF 36.

**B. Prior Action Brought by Morizio and Al Dente**

In addition to bringing their own action, the Plaintiffs noted that Morizio and Al Dente had previously sued the same Defendants (the "Al Dente action"). In February 2014, Al Dente and Morizio (the "Al Dente Plaintiffs") sued the Defendants in an action before Judge Leonard D. Wexler. 14-cv-1241 ("Al Dente ECF") 1, 22. They raised a procedural due process claim, a substantive due process claim, and an equal protection claim. *Id.* The Court denied a motion by the Defendants for summary judgment, ruling, *inter alia*, that there were genuine disputes of material fact as to whether the individual Defendants had qualified immunity. Al Dente ECF 122 at 1.

The Al Dente action proceeded to trial. Al Dente ECF 122, 123, 125, 126. The jury rendered a verdict, finding that Ippolito violated the Al Dente Plaintiffs' procedural due process rights; that Ippolito and Blanchard violated their substantive due process rights; that they had proven a claim for municipal liability against Ippolito; that they had proven that Ippolito was the final policy maker of the Town; and that he directly committed or commanded a constitutional violation. AL Dente ECF 128. During post-trial proceedings, the parties settled and voluntarily dismissed the case, and the Court set aside the verdict. Al Dente ECF 142. In the joint stipulation of voluntary dismissal, the parties agreed that the settlement "should not in any way be construed as an admission of wrongdoing or liability on the part of any party or former party, as any such wrongdoing and liability has been and continues to be expressly denied." AL Dente ECF 143-1.

**C. Claims Raised in the Present Action**

The Plaintiffs raise three claims: a Fourteenth Amendment procedural due process claim, a Fourteenth Amendment substantive due process claim, and a claim that the Defendants

conspired to violate their civil rights. ECF 1 at 23–29. In their FED. R. CIV. P. 56 counter-statement, the Plaintiffs clarified that they were bringing their conspiracy claim under § 1983, and not 42 U.S.C. § 1985. ECF 62-15 at 2. The Plaintiffs also allege that the "Defendants' unconstitutional acts, as described herein, were caused by a policy or practice, established by the TOWN, to give IPPOLITO final decision and policy making authority." ECF 1 at 22. Also in the complaint, the Plaintiffs assert that the Defendants' unlawful actions "were driven solely by Defendants' spite, malice, and personal animus towards Plaintiffs' tenant, and for no other legitimate, rational, or lawful purpose." *Id.* at 24.

As to relief, for each claim they ask for $1 million in compensatory damages and $5 million in punitive damages, for a total of $3 million in compensatory damages and $15 million in punitive damages. They also ask for attorneys' fees, costs, expert fees, and any other relief the Court deems proper. *Id.* at 29.

Presently before the Court is a motion for summary judgment by the Town, Ciambra, and Cangro. ECF 56, 68.

## II. DISCUSSION

Defendants the Town, Ciambra, and Cangro move for summary judgment. In their summary judgment motion, the Defendants contend first that the Al Dente action has no bearing on the present action. Second, they assert that the Court should deny each of the Plaintiffs' three claims and dismiss the action. Third, they argue that Defendants Ciambra and Cangro are entitled to qualified immunity. Further, in their reply, they argue that the Plaintiffs in their opposition relied on an inadmissible affidavit. In this discussion, the first part of the discussion section resolves issues pertaining to the Al Dente action. The second part examines the affidavit from the opposition. The third part concerns the claims raised in the summary judgment motion,

addressing each of the Defendants' arguments in turn. The fourth part addresses Ciambra and Cangro's qualified immunity claim.

## A. The Legal Standard

Rule 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F. 3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," and the party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation marks omitted).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary

judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**B. As to the Al Dente Action**

The Defendants argue in their summary judgment motion that, as a matter of law, the verdict in the Al Dente action "never existed" because the parties settled the case. ECF 56-28 at 1–2. In opposition, the Plaintiffs contend that the "collateral effect" of the undisturbed portions of the Al Dente Action's verdict raise genuine questions of fact that preclude summary judgment in this action. ECF 62-16. First, the Court denied the Defendants' summary judgment motion in the Al Dente Action, and second, a jury returned a verdict in favor of the Al Dente Plaintiffs. ECF 62-16 at 2–3. Thus, they argue, a jury could return a verdict in the Plaintiffs' favor in this action. *Id.* In reply, the Defendants argue that the entirety of the verdict in the Al Dente action was set aside; the denial of summary judgment in that action was only two-pages long; and it did not state which issues of material fact existed. ECF 64 at 5, 9–10.

The Court finds that the holding in the Al Dente action is of no collateral consequence to this action. *Cf. Schwartz v. Chan*, 142 F. Supp. 2d 325, 330 (E.D.N.Y. 2001) (Spatt, *J.*), ("Indeed, 'a vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.'") (quoting *No East-West Highway Comm., Inc. v. Chandler*, 767 F.2d 21, 24 (1st Cir. 1985)).

As to the denial of summary judgment in the Al Dente action, the Court finds the ruling on qualified immunity persuasive, but again, not binding on the Court in the present action. *Id.* As noted by the Plaintiff, the Court in the Al Dente action did not provide reasoning for its ruling on qualified immunity; thus, the Court examines the issue in full below.

### C. As to the Affidavit

The Plaintiffs submitted an affidavit from Morizio that was generated during the Al Dente action. ECF 62-3. The Defendants argue that the affidavit is inadmissible because it did not comply with the statutory requirement that it be made under penalty of perjury. ECF 64 at 3–4. The Court agrees. The statutory requirements for such affidavits provide that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, under penalty of perjury, and dated, in substantially the following form:
> . . . .
>
> (2) if executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature.").

28 U.S.C. § 1746. The requirement that a party certify that an affidavit is made under penalty of perjury "ensures the trustworthiness of a declarant's statements by subjecting the contents of the declaration to the risk of potential criminal penalties." *Abraham v. Town of Huntington*, No. 17-CV-3616, 2018 WL 2304779, at *3–4 (E.D.N.Y. May 21, 2018) (Spatt, *J.*)

The Morizio affidavit submitted by the Plaintiffs reads, *inter alia*, as follows: "I, Philip M. Morizio, being duly sworn, depose and say . . . ." ECF 56-3 at 1. The Morizio affidavit is fundamentally deficient because it fails to comply with the penalty-of-perjury requirement of § 1746. This Court has recently refused to rely on an affidavit that also failed to include language about perjury. *Abraham*, 2018 WL 2304779, at *3–4 ("PETER ABRAHAM, being

duly sworn, deposes and says . . . ."); *see Innovative Tech., LLC v. Nanoprotech FL, LLC*, No. 16-CV-3797, 2018 WL 1440539, at *4 (E.D.N.Y. Mar. 22, 2018) ("Finally, the Court notes that the purported translation includes a translator's 'affidavit' that was neither notarized nor sworn under penalty of perjury. The purported affidavit therefore fails to comply with 28 U.S.C. § 1746."); *see also Mugno v. Societe Internationale De Telecommunications Aeronautiques, Ltd.*, No. 05-CV-2037, 2007 WL 316573, at *9 (E.D.N.Y. Jan. 30, 2007) ("In any event, Mugno's Declaration is further deficient in that it is not made under penalty of perjury.").

### D. As to the Plaintiffs' Claims

#### 1. Procedural Due Process

The Fifth Amendment instructs that "No person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The Fifth Amendment is applicable to the states through the Fourteenth Amendment, which explicitly prohibits "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).

In evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *Razzano v. Cty. of Nassau*, 765 F. Supp. 2d 176, 185 (E.D.N.Y. 2011) (Spatt, *J.*); *see also Carroll v. Krumpter*, --- F. Supp. 3d ----, 2019 WL 3069757, at *9 (E.D.N.Y. July 12, 2019) (Spatt, *J.*). Where, as here, the Plaintiffs allege a deprivation pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. *Razzano*, 765 F. Supp. 2d at 185.

Conversely, post-deprivation procedures do not, *ipso facto*, satisfy due process. *Id.* Courts must look to the three-part test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 96 S. Ct. 893, 902–03, 47 L. Ed. 2d 18 (1976). *Id.* Under the *Mathews* test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action. *Id.*; *see Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 235 (E.D.N.Y. 2019) (Spatt, *J.*).

In their summary judgment motion, the Defendants allege that following the May 2012 Citations, the Plaintiffs had an opportunity to be heard on those violations in Nassau County District Court. ECF 56-28 at 10. They further assert that even if Ippolito acted out of malice towards the Plaintiffs in issuing the September 2013 Citations, they had an adequate post-deprivation remedy; an Article 78 proceeding. *Id.* at 11. The Plaintiffs never availed themselves of this remedy, and, in their complaint, they implied that the Defendants' actions were random and unauthorized, rather than pursuant to Town policy; thus, the due process claim fails. *Id.* In support of these arguments, the Defendants rely on, *inter alia*, the following: (1) a Nassau County District Court information summarizing the May 2012 Citations, ECF 56-7; and (2) the transcript of the Nassau County District Court proceedings concerning the May 2012 Citations, in which Morizio pleaded guilty to the citations in exchange for the Town's reducing and amending most of the fines to $0. ECF 56-10.

In opposition, the Plaintiffs contend that an Article 78 proceeding would not have provided a meaningful avenue to challenge the Defendants' actions. ECF 62-16 at 13. Further, they assert that they did attempt to avail themselves of post-deprivation procedures with the Town by requesting a hearing after the Defendants padlocked the restaurant in September 2013,

but the Defendants failed to schedule a hearing, in violation of the Town Code. *Id.* at 10, 12–13. They submit a copy of a letter sent in September 2013 in which they rejected the September 2013 Citations and requested a hearing. ECF 62-8.

The parties do not dispute that the Plaintiffs had a property interest in the Premises. Thus, this factor favors the Plaintiffs. The Court must now determine whether the Defendants deprived the Plaintiffs of their property without due process concerning the May 2012 Citations and the September 2013 Citations.

As to the May 2012 Citations, the Court observes that in their opposition, the Plaintiffs did not challenge the Defendants' assertion that they had an adequate post-deprivation remedy in the proceedings before the Nassau County District Court. This factor favors the Defendants.

As to the September 2013 Citations, the Defendants do not contest that the Town failed to provide the Plaintiffs with a post-deprivation hearing after the Plaintiffs had requested one. Their summary judgment motion relies on the assertion that the Plaintiffs needed to bring an Article 78 proceeding before filing suit. The Court disagrees.

Here, the Plaintiffs alleged in the complaint that the Defendants deprived them of due process pursuant to Town policy; thus, they were not required to file an Article 78 proceeding before bringing this § 1983 action. *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996); *see Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) ("[T]he existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures."); *see also Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-5189, 2016 WL 3080722, at *7 (S.D.N.Y. May 25, 2016); *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) (Spatt, *J.*). True, as the Defendants note, the complaint also contained allegations that the Defendants acted

solely out of malice, *see, e.g.*, ECF 1 at 24, but the Plaintiffs never expressly stated that the Defendants' acts were random or unauthorized. As noted above, when ruling on a motion for summary judgment, the Court draws all reasonable inferences in the non-moving party's favor. *Wright*, 554 F.3d at 266.

In the absence of an Article 78 requirement, the Defendants' summary judgment motion as to procedural due process fails. By failing to answer the Plaintiffs' request for a hearing, they denied the Plaintiffs a post-deprivation proceeding. This lack of a post-deprivation proceeding may constitute a denial of due process. *See Doe v. Lima*, 270 F. Supp. 3d 684, 708–09 (S.D.N.Y. 2017) ("The Court need not fix the precise date on which the absence of a post-deprivation hearing deprived plaintiffs' of their right to procedural due process."); *O'Neill v. Hernandez*, No. 08-CV-1689, 2008 WL 860647, at *6 (S.D.N.Y. Mar. 31, 2009) ("Accordingly, the absence of a post-deprivation hearing does not constitute a due process violation unless there has been no pre-deprivation hearing."). Thus, the Defendants' motion for summary judgment is denied as to the September 2013 Citations.

## 2. Substantive Due Process

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 538 (2d Cir. 1994)). In this regard, "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

In order to allege a property interest sufficient to support a substantive due process claim, the plaintiff must allege that it had a valid property interest in the land-use benefit in question. *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) (denial of zoning permit); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998) (change in zoning of parcel of land); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (refusal to apply zoning variance). If the Court finds that the plaintiffs had an adequate property interest, then the plaintiffs still must allege that the defendants acted in an arbitrary or irrational manner in depriving the plaintiffs of that interest. *See Lisa's Party City*, 185 F.3d at 17, *Natalie*, 170 F.3d at 263.

"Not all property rights [] are entitled to the protections of substantive due process. Substantive due process protects only those interests that are implicit in the concept of ordered liberty, *i.e.*, those rights that are so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Reyes*, 995 F. Supp. 2d at 230 (quoting *Ferrari v. Cty. of Suffolk*, No. 10-CV-4218, 2013 WL 4017022, at *9 (E.D.N.Y. Aug. 6, 2013), *rev'd on other grounds*, 845 F.3d 46, 55 n.9 (2d Cir. 2016) ("The court also granted summary judgment to the County as to a substantive due process claim which Ferrari has not further pursued, and which we do not address.")). The "[s]ubstantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires [the court] to exercise the utmost care whenever [the court is] asked to break new ground in this field." *Ruane v. Cty. of Suffolk*, No. 12-1658, 2015 WL 2337329, at *9 (E.D.N.Y. May 13, 2015) (citing *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447, 123 L. Ed. 2d 1 (1993) (internal quotation marks omitted)).

This Court has ruled that liberty interests such as "the right of the individual to contract, to engage in any of the common occupations of life," are within the ambit of substantive due

process.  *Id.*  This Court has also ruled that a party's interest in the use and possession of his vehicle does not state a claim for substantive due process.  *Id.*; *Reyes*, 995 F. Supp. 2d at 230. The Court has further held that real estate developers do not have a property interest in a site plan approval submitted to a municipality's planning board.  *Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 379–80 (E.D.N.Y. 2001) (Spatt, *J.*) (Also denying motion to dismiss substantive due process claim alleging the denial of an application for a building permit).  In *Hampton Bays Connections, Inc.*, at the summary judgment stage, the Defendants did not ask the Court to rule on whether the plaintiffs had stated an adequate property interest with regard to the building permit.  188 F. Supp. 2d 270, 276–77 (E.D.N.Y. 2002) (Spatt, *J.*).  Both the Eastern and Southern Districts have noted that it is "unclear if rental income is a constitutionally protected property right."  *Karol v. City of New York*, --- F. Supp. 3d ----, 2019 WL 2918268 (S.D.N.Y. July 3, 2019); *Andrews v. City of New York*, No. 01-CV-7333, 2004 U.S. Dist. LEXIS 30290 (E.D.N.Y. Nov. 22, 2014).

The Defendants assert that the Plaintiffs do not have a constitutionally protected interest in the rental income flowing from the operation of a restaurant that violates the Town Code, noting that the residential tenant living above Al Dente continued to live there after the closing of the restaurant, and that the Plaintiffs never applied for the permits necessary to re-open Al Dente. ECF 56-28 at 12–13.  They further allege that the Town's actions did not amount to a gross abuse of governmental authority.  *Id.* at 14.

As to this second argument, the Defendants rely on photographic and testimonial evidence of Al Dente's Town Code violations, including, inter alia, Morizio's June 2013 guilty plea to the May 2012 Citations; photographs of the various instances in which Al Dente had violated the Town Code; notices that were sent to Morizio and the Plaintiffs; and an affidavit

from Defendant Ciambra. *See generally* ECF 56-10. As to Ciambra's affidavit, he makes sworn statements that: (a) in August 2013, he inspected Al Dente and found "only token corrective action" done on Al Dente; (b) the same month, he issued Morizio and the Plaintiffs a Building Division Emergency Safeguard Notification outlining what they would need to do to bring Al Dente into compliance with the Town Code; and (c) upon inspecting the Premises in September 2013, Defendant Blanchard found that "the majority of the items listed in the Notification from a month earlier still had not been addressed." ECF 56-2.

In opposition, the Plaintiffs argue they have raised genuine issues of fact as to substantive due process because they have possessed a property interest—the enjoyment and ownership of the Premises—and they have demonstrated the Defendants' "unlawful, arbitrary and capricious conduct" that was unrelated to any Town Code violations. ECF 62-16. They submit the verdict in the Al Dente action as proof that their substantive due process claim should survive summary judgment. ECF 62-13. They also argue that the August 2013 Emergency Safeguard Notification was deficient because it was not signed, and because it only said that failure to comply "may result" in the issuance of a summons. *Id.* at 9. They also rely on the Morizio affidavit and depositions of Plaintiff Leung and Defendant Ciambra. ECF 62-3, 62-4, 62-7. In her deposition, Leung testified that she was told the only reason that the Premises were padlocked was that a Town employee ate at Al Dente and found an insect in her food, and that the Town released the padlock once it learned that Morizio was no longer the Plaintiffs' tenant. ECF 62-4 at 113–14. Ciambra testified that the Plaintiffs had not brought Al Dente into compliance with the Town Code at the time the Town removed the Padlocks. ECF 62-7 at 16.

In Reply, the Defendants argue that in her deposition, Leung conceded that the Defendants did not act with malice towards either of the Plaintiffs, though they provide no

citation for this proposition. ECF 64 at 7. They further note that the Plaintiffs have not contested their position about lacking an adequate property interest. *Id.* at 7–8.

The Court rules that the Defendants are entitled to summary judgment on the substantive due process claim. First, whether a party alleges an adequate property interest is not a question of fact; it is a question of law. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *Missere v. Gross*, 826 F. Supp. 2d 542, 556 (S.D.N.Y. 2011); *Rosendale v. Iuliano*, No. 99-CIV-11701, 2002 WL 215656, at *5 (S.D.N.Y. Feb. 13, 2002); *see also Clubside, Inc. v. Valentin*, 468 F.3d 144, 154 (2d Cir. 2006). Second, the Plaintiffs fail to establish that they have an adequate property interest to support a substantive due process claim.

The Court must consider New York law to determine whether the Plaintiffs had a protected property interest in the Premises. *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 256 (E.D.N.Y. 2014); *DeFalco v. Dechance*, 949 F. Supp. 2d 422, 430 (E.D.N.Y. 2013). "In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the . . . due process clause[,] a landowner must show a 'clear entitlement' to that benefit." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (citing *Clubside, Inc.*, 468 F.3d at 152); *see also DLC Mgmt. Corp.*, 163 F.3d at 130 (noting that courts consider a party's entitlement "not only to a property interest in what is sought, but also to a property interest in what is owned"). A mere "abstract need or desire" for the benefit is insufficient." *Ahmed*, 7 F. Supp. 3d at 257 (citing *RRI Realty corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989)).

"[A] constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi*, 18 F.3d at 192; *see Cunney v. Bd. of Trs. of Vill. of Grand View*, 56 F. Supp. 3d 470, 493 (S.D.N.Y. 2014). A

plaintiff possesses a "legitimate claim of entitlement" to a particular benefit if, "absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *RRI Realty Corp.*, 870 F.2d at 917 (citation and internal quotations omitted). An entitlement to a benefit arises "only when the discretion of the issuing agency is so narrowly circumscribed" as to virtually assure conferral of the benefit." *Id.* at 918.

The Town does not have such narrow discretion. Under the Oyster Bay Town Code, a "dangerous building" is any building or structure in which, *inter alia*, (1) there exist "violations of any provision of any code or ordinance of the Town of Oyster Bay, such that the building becomes dangerous to life, safety, morals, or the general health and welfare of the occupants or people or the Town of Oyster Bay"; or (2) there is an electrical system which is defective, has an improper type of wiring for the purposes intended, or fails to meet ventilation requirements; or there are plumbing, sewage or drainage facilities that are not in conformity with applicable building and plumbing codes; or (3) there are inadequate or insufficient facilities for ingress and egress in the event of a fire, panic or other emergencies. Town Code § 96–2(4), (8), (12). The Code also establishes when the Commissioner of Planning may, because of an emergency, immediately seal a dangerous building:

> Any provision of this chapter to the contrary notwithstanding, where it reasonably appears that there is imminent danger to the life, health, safety, and/or welfare of any person unless a dangerous building or structure, as defined herein, is immediately, sealed, boarded up, repaired, vacated or demolished, the Commissioner shall cause the immediate sealing, boarding up, fencing in, reparation vacation and/or demolition of such dangerous building or structure.

Town Code § 96-20; *see also Ahmed*, 7 F. Supp. 3d at 258.

In his affidavit, Ciambra made sworn statements that the Premises contained the following violations of the Town Code, violations that the Town recorded as part of the May

2012 Citations, and violations that remained largely uncorrected at the time of the September

2013 Citations:

> (1) The Plaintiffs had constructed an interior foyer or vestibule inside the front entrance to the restaurant, with an inward-swinging outer door and an outward-swinging inner door, both of them into the confined foyer, making it a safety hazard. The Plaintiffs had neither applied for nor obtained a building permit for the foyer, in violation of Town Code § 93-15A.
> (2) Also built without a permit was an expansion of the restaurant's rear patio, which had previously been open-air but now contained flimsy half-walls that "could be shaken back and forth with just the pressure of one's hand."
> (3) They had installed an electrical conduit and outlet boxes without providing documentation that the work had been done by a licensed electrician, or that they had obtained a post-completion certificate of electrical inspection and approval, in violation of Town Code § 135-41A and former § 107-10A.
> (4) They built a homemade wooden wall and vinyl canopy that had no information relating to its fire-retardant characteristics.
> (5) Beneath the canopy were two gas-fed heaters. Again, the Town had no records of whether the work, a fire hazard, had been performed by a licensed plumber or pursuant to a permit, in violation of Town Code §§ 180-22 and 180-30.
> (6) The restaurant contained an enclosed structure around its courtyard, and no one had applied for or received a certificate of occupancy for the enclosed structure, in violation of Town Code § 93-28. The enclosed area also doubled the restaurant's permitted occupancy without a public assembly license, in violation of Town Code §§ 183-5 and 183-6.
> (7) The restaurant was also using part of its basement as a food preparation area, with no certificate of occupancy for the basement.

ECF 56-2 at 2–6. Ciambra also said that to "let safety issues go unchecked would be a

dereliction of my duties and potentially put in jeopardy the lives of people [1] inside the

restaurant, [2] upstairs in the apartment, and [3] in the neighboring house literally feet away to

the rear. *Id.* at 8.

The Premises' several ongoing Town Code violations made it by no means certain that

the Plaintiffs were entitled to the benefit of collecting rent. Unlike the case in *Ahmed*, where the

Plaintiffs survived a motion to dismiss because they pleaded that any Town Code violations were

insufficient to warrant the closing of a store, *see* 7. F. Supp. 3d at 258–59, here, the Plaintiffs fail

to counter the Defendants' allegations and submissions that they failed to cure the deficiencies at the Premises over a period of 15 months. Their allegations to the contrary do not comport with the evidence in the record. They claimed that the Nassau County District Court dismissed the Town Code violations issued in the May 2012 Citations, but the court transcript reveals Morizio as having pleaded guilty to several of those violations. *Compare* ECF 62-4 at 8–9 *with* ECF 56-10. Morizio's Affidavit contends that the charges listed in the August 2013 Emergency Safeguard Notification were false, but as noted above, the Court may not rely on that affidavit. In any event, the Defendants submit both photographic and testimonial evidence that the items in the August 2013 Emergency Safeguard Notification and the September 2013 Citations were merited. *See generally* ECF 56.

Accordingly, the Defendants' motion for summary judgment is granted as to the substantive due process claim, because the Plaintiffs do not allege an adequate property interest. Here, the Plaintiffs failed to meet the first prong of the substantive due process standard, and the Court need not reach the second prong issue of whether the Defendants acted arbitrarily.

### 3. Conspiracy

A conspiracy claim under § 1983 has three elements: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). However, before the Court can consider such a claim, the Plaintiffs must overcome the "first step of analysis" regarding a conspiracy claim. *Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010) (quoting *Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 50–51 (2d Cir. 2007) (Summary

Order) (affirming dismissal of conspiracy complaint "at the first step of the analysis" because complaint made reference to only employees of the same corporation").

Under the intra-corporate conspiracy doctrine, officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. *See Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008); *Brioch v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246–47 (E.D.N.Y. 2009); *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees."); *accord Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 359–60 (E.D.N.Y. 1999).

"[A]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of Educ. of the City of N.Y.*, No. 97-CV-1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999); *see Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 228 (E.D.N.Y. 2014). For this exception to apply, it is not enough to "simply join employees as defendants in their individual capacities." *Guichard*, 26 F. Supp. 3d at 228 (internal quotation marks and alterations omitted). The Plaintiff "must also allege that they acted other than in the normal course of their corporate duties." *Hill v. City of New York*, No. 03-CV-1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005).

The Defendants argue that the intracorporate conspiracy doctrine bars the Plaintiffs' conspiracy claims, and that the personal interest exception does not apply. ECF 56-2 at 15. They point to, *inter alia*, the affidavits by Ciambra and Cangro, where those defendants say there

was no improper motive for the citations issued against the Premises, and no animosity by the Defendants towards Morizio or the Plaintiffs. ECF 56-2 at 7–8, 56-3 at 2–3.

The Plaintiffs argue that the intracorporate conspiracy doctrine does not apply here, because Defendant Ippolito conspired with the Michael and Claudia Taglich, who purchased the Premises from the Plaintiffs, who are not defendants in this action. ECF 62-13 at 15. They allege that Ippolito evidenced this conspiracy through his mistreatment of the Plaintiffs, which was a means to (a) influence the Plaintiffs to sell the premises, (b) scare away other buyers, and (c) "steer the Premises to" the Tagliches, with whom he was friendly. *Id.* at 15–16. In support, they cite Plaintiff Leung's deposition, in which she testified that after Morizio ended his tenancy with the Plaintiffs, other prospective tenants told her that Ippolito gave them a "hard time," and that Claudia Taglich informed her that Ippolito was friends with Michael Taglich. ECF 62-4 at 23–30. The Defendants contend that the Plaintiffs' opposition is insufficient as a matter of law because it is based entirely on hearsay. ECF 64 at 8–9.

The Court denies the Plaintiffs' summary judgment motion as to the conspiracy claim. Although the Second Circuit has recognized the intracorporate conspiracy doctrine in 42 U.S.C. § 1985 conspiracy cases, *Hermann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978), the law is unclear whether courts may apply the doctrine to § 1983 conspiracy cases, *see Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (collecting cases and noting that the Second Circuit has yet to apply the doctrine to § 1983 cases); *Hill*, 2005 WL 3591719, at *6; *but see Nassau Cty. Emp. "L" v. Cty. of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004) (applying doctrine in a § 1983 case).

In the absence of mandatory authority, the Court assumes that the doctrine does apply to § 1983 cases. Even in such a scenario, the parties' submissions raise genuine disputes as to

whether the case fits within the personal stake exception.  *See Gutierrez v. City of New York*, No. 15-CV-9907, 2019 WL 1427391, at *3 n.3 (S.D.N.Y. Mar. 29, 2019); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *12 n.12 (S.D.N.Y. Sept. 28, 2018).  The Plaintiffs submitted evidence that Town employees were not acting in accordance with their official duties.  Ciambra testified that the dangerous conditions at the Premises had not been remedied at the time the Town removed the padlocks, even though they would still present a dangerous condition, and that Town employees did not inspect the upstairs apartment on the Premises to see what dangerous conditions, if any, existed there.  ECF 62-7 at 12–19.  This conflicts with his affidavit, where he said that it would be a dereliction of duty not to consider the safety of the upstairs tenant, or to let safety issues at Al Dente go unchecked.  ECF 56-2.  The Plaintiffs have thus raised questions of fact as to the Defendants' motives in padlocking Al Dente.

### 4. Qualified Immunity

The Defendants further argue that Defendants Ciambra and Cangro are entitled to qualified immunity.  The purpose of qualified immunity is the following:

> The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.  The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

*Lee v. Sandberg*, 136 F.3d 94, 100–01 (2d Cir. 1997) (internal citations and quotation marks omitted); *accord Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995) (noting that under qualified immunity, "a government official may claim immunity from suit only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful"); *Mediavilla v. City of New York*, 259 F. Supp. 3d

82, 95 (S.D.N.Y. 2016) ("the doctrine of qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments' by immunizing them from suit for damages unless their conduct violated clearly established constitutional rights of which a reasonable person would have known.'" (quoting *Stanton v. Sims*, 571 U.S. 3, 6, 134 S. Ct. 3, 5, 187 L. Ed. 341 (2013)).

Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1089 L. Ed. 2d 271 (1986). Whether or not individual defendants are entitled to qualified immunity is a question of law. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (noting that qualified immunity should be decided "at the earliest possible stage in the litigation"); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995) ("Since qualified immunity is intended to protect government officials from the harassing and expensive burdens of litigation as well as the threat of monetary damages, courts have encouraged the use of summary judgment as a procedural device to dispose early in the litigation process of those claims barred by qualified immunity."); *see also Hansen v. Town of Smithtown*, 342 F. Supp. 3d 275, 295 (E.D.N.Y. 2018) (Spatt, *J.*) (collecting cases).

The Supreme Court has explained that "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (same); *see also Simms v. Vill. of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997) (holding that qualified immunity protects public officials "from

civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it is objectively reasonable for them to believe that their acts do not violate those rights" (internal quotation marks omitted)). A principle is clearly established if it has a "sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589; *see Mudge v. Zugalla*, 939 F.3d 72 (2d Cir. 2019).

The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 135 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)). For the above-mentioned individual Defendants' conduct to be unlawful, it must have been clearly established either by a Supreme Court or Second Circuit Court of Appeals case directly on point, or there must be agreement from other federal courts. *See Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004) ("Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." (citing *Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999)).

The Defendants allege that Ciambra and Cangro should receive qualified immunity as to all of the causes of action raised in the complaint, because they are not Town officials or policymakers; they are employees. ECF 56-2 at 15. In addition, they argue that Ciambra and Cangro did not violate the Plaintiffs' rights when they implemented the Town Code, and that it was objectively reasonable to believe that they were not violating the Plaintiffs' rights. *Id.* at 15–16.

The Plaintiffs assert that because there are questions as to whether the Defendants had an improper motive, it would be inappropriate to grant qualified immunity. ECF 62-16 at 16–17. In reply, the Defendants reiterate the arguments from their motion. ECF 64 at 9.

Where the specific intent of a defendant "is an element of [a] plaintiffs claim under clearly established law, and [a] plaintiff has adduced sufficient evidence of that intent to defeat summary judgment, summary judgment on qualified immunity grounds is inappropriate." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *Locurto v. Safir*, 264 F.3d 154, 169–70 (2d Cir. 2001); *Sheppard v. Beerman*, 94 F.3d 823, 828 (2d Cir. 1996). Until such an issue is resolved by a factfinder, a claim cannot be dismissed on qualified immunity grounds. *Mandell*, 316 F.3d at 385; *see Hecht v. Rush*, No. 15-CV-4200, 2016 WL 7416138, at *4 (S.D.N.Y. Dec. 21, 2016).

Here, the Defendants' alleged improper motive in issuing the citations is an element of the Plaintiffs' § 1983 conspiracy claim, and the Court has ruled that there are triable issues of fact as to the motive of the individual Defendants. Thus, there are genuine questions as to whether the conspiracy claim can be dismissed on qualified immunity grounds. *See, e.g., Hasper v. Cty. of Suffolk*, No. 11-CV-3227, 2015 WL 806706, at *11 (E.D.N.Y. Feb. 25, 2015); *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 524 (E.D.N.Y. 2011).

As to procedural due process, the Court also denies the request for qualified immunity. The denial of a post-deprivation remedy would violate a constitutional right. *See, Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880; *Doe*, 270 F. Supp. 3d at 708–09. This right was clearly established in September 2013 by Second Circuit precedent. Further, the Defendants have not shown that the denial of a post-deprivation hearing was objectively reasonable.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Rule 56 motion in part and denies it in part. The Court grants the motion as to the Plaintiffs' substantive due process claim, and that claim is dismissed with prejudice. The Court denies the motion as it pertains to the Plaintiffs' claims for procedural due process and conspiracy. The Court further denies the requests for qualified immunity.

It is **SO ORDERED.**

_____/s/ Artur D. Spatt_____                           _____October 21, 2019_____

Arthur D. Spatt, U.S.D.J.                                                        Date